Good morning, aloha. My name is Pamela Byrne. I'm from Honolulu, Hawaii. I represent the appellant. I would like about seven minutes to make my presentation and retain the remainder for rebuttal. I know the court has read the briefing. I will be, therefore, succinct in discussing the facts of the case. As you know, this gentleman pled guilty under a conditional plea to being a felon in possession of a gun. The gun was found in a locked box in a locked cabinet under his house, and the police had entered his home pursuant to a search warrant. We contest the search warrant. We asked the court for a Franks hearing and were denied. And it is because of that that we're here today in front of you. This court knows very well the elements of a Franks hearing and the test. And it is important. There's a couple of things that I think we always need to keep in mind. One is that a search warrant is an ex parte procedure. The usual adversarial process is set aside properly so. But that means that the neutral, calm reviewing magistrate is all the more needs to have relevant, impartial, correct facts before him or her. In order for me to prevail in a Franks hearing, I have to give the court more than just conclusion information. I have to give it, I hope, some relevant facts. In this case, what I felt would have been helpful to the reviewing judge and what I felt should have gotten me obtained a Franks hearing is the fact that, well, there were three things. The first is that the affidavit omitted the fact that the confidential informant, and his name is Fontes, that the confidential informant was a methamphetamine dealer. The judge who reviewed this search affidavit for search warrant didn't know that it was a dealer. And that information is supplied by my Exhibit H, which is a police report of the police sending in a confidential informant to buy drugs from Mr. Fontes. The other matter that I think of interest is that Mr. Fontes had been arrested. That police report was on April 8th. On April 11th, Mr. Fontes was arrested for drug dealing. On April 12th through the 22nd is when he allegedly set up these undercover buys with the police. I had thought that the proper procedure for the district court faced with a request for a Franks hearing was to imagine that everything your client thought should be in the affidavit should be considered as part of the affidavit, and everything that shouldn't have been in it should be viewed as not in it, and then to look at the affidavit sort of cut and paste and determine whether it would have been sufficient to authorize the search. I think that's appropriate. And why wouldn't the remaining parts of the affidavit provide ample probable cause in this case? Well... I mean, in some respects the fact that he had recently been arrested for a narcotics violation strengthens his credibility as a drug informant, doesn't it? It goes both ways. But I think that the court should have known that this fellow was pretty obviously trying to work off that arrest and had a bias. Probably the first C.I. in the history of drug investigations to ever do that. I'm sure. And the other part, though, that I wanted to add is that we have an unrefuted affidavit from the defendant's wife that the informant in this case was their drug dealer, that they were the buyers and that the confidential informant was, in fact, the drug dealer. I want to point out that's unrefuted. In the government's moving papers, which he included in their supplemental excerpts of record, there are countless references to things that are not submitted to the court by affidavit. There are references, if you would look on page 60, for example, it says the confidential information included, confidential informant's information included drug activities in several geographic areas of the Kaua region, and it goes on. And it goes on discussing that the confidential informant told the police officer that my client is extremely paranoid, particularly about his wife, and so on. And none of this was properly before the reviewing court. There were no affidavits from the confidential informant. There were no affidavits or declarations from the police department as to any of these alleged facts, and yet the judge considered them. When the court made its rulings, he did say there were some representations made that were not in the record.  Nonetheless, on page 71 of the excerpts of record in the judge's order, he specifically references whether or not the confidential informant had a crush on my client's wife and how the confidential informant claims he did not. None of that is in evidence. That is stuff that the government brought up without any ñ it's outside the record is my point. And my point is that it would be relevant. But wouldn't a reviewing judge want to know that, A, this fellow is ñ the confidential informant actually has a bias, and his bias is not only to work off his case but to get rid of this particular male competition? These are things, I think, that were improperly excluded from the record. And the fact also ñ I went into some detail about the undercover ñ allegedly the confidential informant went to my client's house and bought a small ñ or purchased or obtained a small package of methamphetamine. I have a lot of questions about that, and although I didn't present any documents, I did question the validity of that. The search ñ the affidavit in support of the search warrant does not say that the officer gave the confidential informant any money. It does not say when this alleged transaction occurred. It does not say how much methamphetamine was brought. The methamphetamine was never entered into evidence. It is totally a fiction or at least a factor of ñ of ñ it's unverified. And the usual factors that are there to be verified, such as we gave him some undercover ñ we gave him buy money, this thing was done at 2 o'clock or a specific time, this amount of drug weighed this amount, none of that was there. They just said, well, he said he gave us some. We watched him go into the house. He came out, he came back, and he gave us some. I think that's insufficient when you have a neutral, impartial magistrate who is supposed to decide appropriate facts. I think that's not enough. So when you take the gestalt, the entire thing together, I think the magistrate and the reviewing judge needed more. Roberts. You have about two minutes. Would you like to save it for rebuttal? Yes, I would. Okay. Thank you for your argument. We'll hear from the United States at this time. Mr. Porter. Thank you, Your Honors. Good morning. My name is Wes Porter. I represent the District of Hawaii, the U.S. Attorney's Office out there, and the government in this matter. Essentially what happened in this case, this is a search warrant case, and the basis for the search warrant was primarily upon review, information received from a confidential informant. This is a local search warrant actually from Hawaii County out on the Big Island. And this essentially comes from local law enforcement, Hawaii County Police Department working with this CI. Now, essentially what the defendant, when he gets over to Federal court after we recover a firearm and he's charged with a Federal offense as a result of that possession of a firearm, what we have is we have a defendant who's looking at this informant in a typical kind of small-town fashion, looking at it and having a problem with the informant, having a problem with how could the local law enforcement rely on this person as an informant. And that's sort of the square peg in all of this, because that square peg they're now trying to apply to a Frank standard and to basically alleging falsities in the search warrant itself. The key, however, is what the district court looked at is, you know, what were the false statements? What were the actual alleged perjured statements by the defiant in this search warrant, and particularly in the affidavit for the search warrant? And there just wasn't any. Now, there was information, something like the confidential informant had purchased drugs from the defendant ten times. That was in the search warrant affidavit that, you know, in a week and a half of working with this particular confidential informant, local law enforcement found him to provide truthful information six times. And some of this information may be too generic, may have needed more explanations. But when you – and then they corroborated that information up against numerous community complaints, outreach, anonymous phone calls, that drug activity was happening at the defendant's residence. Now, all of that added up together is not going to get us there. It's not going to be probable cause. We're not going to have a right to search the defendant's residence as a result of that information. That's why, as the district court seized upon, the controlled by in this case – We get used to reading police reports. And they usually say, you know, at 0100-15, at such and such a place, we strip searched this guy. And then we put him into a car and we followed his car half a block away to such and such an address. And he went in and he was in there three minutes. And we'd given him some marked bills. And then he came. This is very, very vague. I don't know what time it is. I don't know what day it is. I don't know where it happens. Yes, Your Honor. It's really a very sloppy affidavit. And I think that is the thrust of the defendant's claim down below. And I think Judge George, visiting Hawaii from Las Vegas, the district judge on this case, I think he took the proper approach in that in saying what we have to look at, while we all agree that this affidavit could have been written with greater specificity with how much drugs were recovered, what time it occurred, what the actual, you know, they say they searched the person, searched his mode of transportation, underwent surveillance, sent him into the, you know, met at the prearranged location afterwards and recovered the drugs for him. While we all would have liked more detail, the claim of more detail and the want for more detail in the defendant's request has to implicitly equal a false statement. And it's not enough to get us there that that is a claim of a false statement. We have to believe that the affiant in writing that, in describing that, as insufficient as it may be, equates to a false statement within the affidavit. And then, as the judge points out, once we make that first part, that determination that it is equivalent to a false statement, do we then, in the second part, you know, omit the entire mention of the control by itself. While it could have been written better, while it could have been written with greater specificity, we're certainly not in the place where we're going to knock out everything as a result of that control by in assessing this informant's credibility in this warrant. And that's the issue, as we start to look at through the moving papers below. The contested false statements, we don't even get to the idea of this second part of redacting the alleged false statements and supplementing in these omissions, because there really aren't any Franks-type false statements. Saying when the affiant says, the C.I. provided me useful testimony or truthful testimony six times, to attack that statement as false, you have to attack the fact that the informant ever told the affiant that he actually provided the affiant with truthful information. And we've put some case law into our briefings before this Court as to this is not the time to attack the credibility of the informant. Rather, it's to attack the false statements or recklessly false statements of the affiant in this warrant. And to address the Court's question on page 72 of the excerpts of record, the district court below, Judge George, you know, he has used a written opinion on this matter as to whether there's just a substantial preliminary showing entitling the defendant to a Franks hearing. And in that, he goes through the analytical drill of assuming that the statements that you put forward before this Court are false. We'll analytically redact them out, assuming that there are material omissions that might affect probable cause. We'll supplement them in. And accordingly, the Court finds that the affidavit supports a finding of probable cause even as modified. Again, that's on excerpts of record, page 72. So he goes through the proper test of applying these alleged false statements and these alleged material omissions. And really, when it comes down to the control by, what the judge below did and what this Court should do in looking at this control by, really look at the challenge, because there's never a challenge on the facts of it that the control by didn't take place or the control by wasn't from Mr. Reichner's residence. Instead, it's equivalent with words. You go through a discussion of the word obtained versus the word purchased. We go through a discussion of the problem in the affidavit they have with the words constant surveillance. And really, the evidence that supported every one of these Franks challenges, that substantial preliminary showing, has to be coupled with an offer of proof, has to be coupled with evidence. And while it would be one thing in a Franks challenge to say this informant or the defendant was not even at his residence on that day and that type of challenge, here all we have is a map. And look, it would be difficult for them to actually surveil the informant as he went in to conduct the control by. So the type of challenge and the type of evidence supporting that challenge just cannot support an actual false statement in the warrant, an actual material omission in the warrant. And even as supplemented again, the district court judge properly found that this was probable cause to search his residence. Unless there are any questions from you, Your Honor. Roberts. I don't see any. Thank you for your argument. Rebuttal, counsel. Well, of course, we couldn't submit an affidavit saying the defendant wasn't present that day because we don't know what the day was that Mr. ---- that the confidential informant allegedly obtained ice from my client's residence. We're not given a date. We're not looking at necessarily the sufficiency of the affidavit. We were looking at whether you raised on behalf of your client a sufficient predicate of falsity, recklessness, perjury, et cetera, to require a Franks hearing. You're correct. That is the test. And obviously I submit that although the threshold is high, now and then a Franks hearing is warranted. And I think in this case it was. Another issue that we had with the affidavit, in addition to the fact that it was self-verifying, in other words, it said that Mr. Reischner was a drug dealer and the affiant knew that because he had talked to another detective who said, yeah, that's true. There was just a lot of self-verifying, no extrinsic verification of the facts in the affidavit. And another thing that I queried at the time and I questioned the judge's decision on is that, again, the affidavit said that this particular affiant strike that the confidential informant had given information, truthful information, six times in the past 10 days. But how the heck do we know that? How do you know it was truthful? How does the reviewing judge know that? Because there's no search warrants, there's no arrests. We know that he gave us truthful information six times in the past 10 days because we've arrested these people, we've found dope in their home, whatever. We just have to take the officer at his word that it's truthful information. My point is it's virtually a format, a form affidavit with extreme generalities. And may I also add that the warrant is very general. It suggests items to search for include methamphetamine and marijuana. It mentions two or three times marijuana and marijuana sales. Of course, there's no marijuana at issue in this case. It just goes to show you how prepackaged this matter was. I see my time is up. It is. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. So we'll now proceed to the United States v. Strader out of Nevada. If counsel will come forward.
judges: Canby, Hawkins, Duffy